**TECH ENTERPRISES, INC., Plaintiff,**

v.

**Richard T. WIEST d/b/a WS & S Inc., Wiest Sales and Service, Inc., and Richard H. Dermott, Defendants.**

No. 06 C 0042 C.

United States District Court, W.D. Wisconsin.

April 24, 2006.

Robert G. Wixson, Winner, Wixson & Pernitz, Matthew M. Beier, Murphy Desmond, David J. Pliner, Corneille Law Group, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary and declaratory relief arising out of a dispute over the production, marketing and sales of household cleaning products. Plaintiff has asserted seven causes of action against defendants Richard T. Wiest and

Wiest Sales and Service, Inc. (including trademark infringement, unfair competition and false advertising). Two of those seven causes of action are also brought against defendant Richard H. Dermott (misappropriation of trade secrets and conspiracy). In addition, plaintiff has raised an additional claim solely against defendant Dermott (breach of contract). Presently before the court is defendant Dermott's motion to dismiss plaintiff's three claims against him under Fed. R.Civ.P. 12(b)(1), in which he contends that the court lacks subject matter jurisdiction over plaintiff's claims. Defendant Dermott's motion will be granted in part and denied in part. For the sole purpose of deciding this motion, I accept as true the allegations in the complaint.

## ALLEGATIONS OF FACTS

### A.  *Parties*

Plaintiff Tech Enterprises, Inc., is a Wisconsin corporation in the business of developing, manufacturing, marketing, distributing and selling household cleaning products including carpet cleaners and stain removers. Defendant Wiest Sales and Service, Inc., is a Wisconsin corporation that distributes consumer products; it buys products from companies such as plaintiff and sells them to dealers and retail outlets. Defendant Richard T. Wiest is the owner of Wiest Sales and Service and a citizen of Wisconsin. Defendant Richard H. Dermott is a citizen of Wisconsin and a former owner of plaintiff Tech Enterprises.

### B.  *Plaintiff's Products*

Plaintiff has marketed, distributed and sold products under the trademark "TECH" since 1976, including TECH Final Answer Carpet Care and TECH Stain Remover. Plaintiff sells its products to distributors and to major retail chains and outlets throughout the United States. Plaintiff enjoys a strong reputation in the trade and its TECH products enjoy substantial consumer recognition and goodwill.

In April 2002, plaintiff applied to register the trademark TECH with the United States Patent and Trademark Office; the application is still pending.

### C.  *Defendant Dermott*

Defendant Dermott and Kenneth Grant were plaintiff's sole shareholders from the time of its inception in 1975 through 2002, when Dermott sold all of his shares to plaintiff. In March 2002, defendant Dermott and plaintiff entered into an Offer to Sell Shares and an Addendum to Offer to Sell Shares. The Addendum provided that Dermott would not

> sell, disclose, use or otherwise benefit from any and all intellectual property and confidential information belonging to [plaintiff], or developed by [plaintiff], or any of its employees. Said intellectual property and confidential information includes but is not limited to ... [t]he chemical formula or manufacturing process for any of [plaintiff's] products.

Plaintiff believes that defendant Dermott disclosed the chemical formula and other information regarding the method, technique and process of manufacturing plaintiff's TECH Stain Remover to the Wiest defendants.

### D.  *Defendants Wiest and Wiest Sales and Service*

For a number of years, defendant Wiest Sales and Service purchased TECH products from plaintiff. Defendant Wiest visited plaintiff's facility on a weekly basis to pick up products and pay for the orders. On July 18, 2003, defendant Wiest asked plaintiff for a greater share of the profit on his sales. Plaintiff instructed defendant Wiest to submit his request in writing. Later that day, defendant Wiest stated to one of plaintiff's employees that he would

"slit Ken's throat someday." (Ken Grant is one of plaintiff's owners). At some time in August 2003 defendant Wiest told another of plaintiff's employees that she should start looking for another job because plaintiff was having financial trouble and was going out of business. Over the next eighteen months, defendant Wiest continued to make false statements about plaintiff. In May 2004, defendant Wiest told one of plaintiff's employees that defendant Dermott had informed him that plaintiff was on the verge of bankruptcy.

On January 31, 2005, defendant Wiest announced that he was severing his business relationship with plaintiff. On February 21, 2005, defendant Wiest sent plaintiff a letter stating

> [U]pon advice of Counsel I am informing Tech Enterprises that Wiest Sales & Service, Inc., is retaining the right to sell all forms of Tech Stain Remover by whomever made to all accounts which were established by Wiest Sales over the past 23 years . . . .

In the same letter, defendant Wiest included an order for plaintiff's TECH products and stated:

> If I do not hear from you concerning the enclosed order by Friday noon on February 25, 2005 I will consider you no longer want to do business with me and will place an order with the other company.

> In a response to this letter, plaintiff wrote that it

> accepts the fact that you will place an order with another company [and][b]ased on this and other factors, Dick Wiest/Wiest Sales and Services, Inc. will no longer be representing Tech Enterprises, Inc. effective immediately.

In the spring of 2005, defendants Wiest and Wiest Sales and Service (the Wiest defendants) began marketing a stain remover using plaintiff's TECH trademark. The Wiest defendants informed their clients that these products were the "new improved" TECH, that they were the replacement for TECH products and that the TECH Stain Remover and TECH Final Answer Carpet Care were no longer being manufactured, were no longer available or had been discontinued. On July 6, 2005, defendant Wiest sent plaintiff a letter stating that he was selling a "new Tech" and that "you are going to see another Tech name in the stores very shortly." On July 28, 2005, plaintiff received another letter from defendant Wiest, stating

> All of us on the road have kept in contact with one another. For over three years we have not reported all the new accounts we picked up because we knew that the present owner would likely take them away from us someday. Hundreds of cases have been sold to stores that we used different invoices on which Tech never saw. Others who have left Tech simply tell these accounts when they call for an order that Tech has been discontinued. In my case I now have these stores and others for a total of 136 locations selling the new improved Tech Stain Remover made in Michigan. The Michigan Tech is now being labeled as a private label for all the Ace stores in the nation and it is being sold with the Tech Group name in all the Do–It–Best Hardware stores also.

> Anything I have said can be verified by call [sic] the former half owner of Tech or Roger Tompkins of Sun Prairie . . . Former partner in TechDick Dermott of Cross Plains—798–2395.

The Wiest defendants asked Cul–Mac Industries, a manufacturer of household cleaning products, to manufacture a product for them and to provide packaging for that product that would include the mark "TECH." Cul–Mac refused to provide such packaging. Defendant Wiest subsequently

provided labels for Cul–Mac to place on their products, reading "Spot Away."

The Wiest defendants have affixed the word "TECH" to the labels of products they have distributed. They covered the word "spot" with the word "tech" on product labels reading "SPOT AWAY STAIN REMOVER" so that the labels read "TECH AWAY STAIN REMOVER."

On August 3, 2005, plaintiff faxed its customers a one-page document containing photographs of plaintiff's TECH products, including TECH Stain Remover and TECH Final Answer Carpet Cleaner, as well as a photograph of the Wiest defendants' TECH AWAY STAIN REMOVER. Plaintiff explained in the document that the Wiest defendants' TECH AWAY STAIN REMOVER was not one of plaintiff's products and was not a "new and improved" version of plaintiff's TECH products. Plaintiff wrote that there were cautions on the label of the Wiest defendants' TECH AWAY STAIN REMOVER.

On or about August 16, 2005, one of plaintiff's distributors informed plaintiff that defendant Wiest had called him to tell him that Wiest's new product was doing very well and that he was expanding the number of stores carrying the product.

Also on or about August 16, 2005, one of plaintiff's retail buyers contacted plaintiff to inquire about the TECH AWAY STAIN REMOVER bottle with a sprayer. Plaintiff explained to the retailer that this was not one of its products. The retailer stated that she had been told that it was plaintiff's product and she had positioned it in her store among plaintiff's TECH products. The retailer told plaintiff she had purchased the product from defendant Wiest and had sold the product to a customer who had requested one of plaintiff's TECH products.

On September 9, 2005, plaintiff received a letter containing an advertisement for the Wiest defendants' TECH AWAY STAIN REMOVER, which included a picture of that product and of plaintiff's TECH Stain Remover, and stated, "THE OLD TECH CAN'T EQUAL *TECH AWAY*." On the advertisement was a handwritten note, which stated

Greetings: Too bad you couldn't afford to have a professional artist do the flyer you sent out. This is just one of various designs we are sending out. The dealers are getting a good laugh again but at your expense.

In May 2005, the Secretary of State of Wisconsin issued a certification that defendant Wiest Sales and Service had filed for recording in the Office of the Secretary of State a statement of adoption of the mark TECH AWAY STAIN REMOVER.

In October 2005, the Secretary of State of Wisconsin issued a certification that plaintiff had filed a statement of adoption of the mark TECH for recording in the Office of the Secretary of State.

On January 19, 2006, plaintiff learned that the Wiest defendants intended to introduce another product using plaintiff's TECH trademark, to be called "TECH CLARIX."

## OPINION

### A. *Standard of Review*

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may rest on several different grounds. Where, as here, the motion attacks the complaint on its face, alleging that the pleadings are facially insufficient to demonstrate the existence of subject matter jurisdiction, the court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences in favor of the plaintiff. *United Transportation Union v. Gateway Western Railway Co.,* 78 F.3d 1208, 1210 (7th Cir.1996) (citing *Rueth v. EPA,* 13 F.3d 227, 229 (7th Cir.1993)); *see*

*also United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

### B. *Supplemental Jurisdiction*

Generally, a federal court has jurisdiction to hear a case in three instances: (1) when the complaint raises a federal question, 28 U.S.C. § 1331; (2) when the parties are citizens of different states and the amount in controversy is greater than $75,000, 28 U.S.C. § 1332; and (3) when a state law claim is part of the same case or controversy as a federal law claim that may be considered under § 1331. 28 U.S.C. § 1367.

Plaintiff asserts three claims against defendant Dermott: (1) breach of contract; (2) misappropriation of trade secrets in violation of Wis. Stat. § 134.90; and (3) conspiracy to injure another in reputation, trade, business or profession in violation of Wis. Stats. § 134.01. Plt.'s Cpt., dkt. # 2, ¶¶ 77, 88, 99. Because all of plaintiff's claims against defendant Dermott are state law claims and because there is no diversity of citizenship among the parties, this court will have subject matter jurisdiction over these claims only if they meet the requirements for supplemental jurisdiction under 28 U.S.C. § 1367.

28 U.S.C. § 1367 states:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

In the present case, the court has original jurisdiction only over plaintiff's first cause of action against the Wiest defendants, which concerns trademark infringement, unfair competition and false advertising (Plt.'s Cpt., dkt. # 2, ¶ 42–48). In its federal claims, plaintiff contends that the Wiest defendants' unauthorized use of plaintiff's trademark "constitutes a false designation of origin, and is likely to cause confusion, mistake and deception as to the affiliation, connection or association of defendant's products with plaintiff and plaintiff's household cleaning products." Plt.'s Cpt., dkt. # 2, ¶ 44. Plaintiff's remaining claims against the Wiest defendants are state law claims. Therefore, this court can exercise supplemental jurisdiction over plaintiff's claims against defendant Dermott only if those claims "are so related" to the federal claims against the Wiest defendants "that they form part of the same case or controversy."

■ The existence of supplemental jurisdiction is predicated on the existence of a substantial federal claim and a common nucleus of operative fact as to state and federal claims such that the claims would ordinarily be tried in one proceeding. *Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This means that a federal court can exercise supplemental jurisdiction over a state law claim when the central facts of the federal claim are also the central facts of the state law claim. *Id.* at 725, 86 S.Ct. 1130.

### 1. *Breach of contract*

■ Plaintiff's claim that defendant Dermott violated certain provisions of the Addendum to Offer to Sell Shares between plaintiff and Dermott does not share a common nucleus of operative facts with plaintiff's federal claims of trademark infringement, unfair competition and false advertising. Resolution of this breach of contract claim would require examination of the parties' contract, which has no bear-

ing on the federal claims pertaining to the Wiest defendants' use of the TECH trademark. Because plaintiff's breach of contract claim requires the court to consider facts entirely different from those underlying the federal claims, this court will not exercise supplemental jurisdiction over it. Defendant Dermott's motion to dismiss this claim will be granted.

## 2. *Misappropriation of trade secrets*

■ Plaintiff's claim that defendant Dermott disclosed plaintiff's trade secrets (and that the Wiest defendants acquired these trade secrets) rests on different facts from those underlying plaintiff's federal claims. Whether defendant Dermott revealed plaintiff's trade secrets and the Wiest defendants learned the trade secrets have nothing to do with whether the Wiest defendants used the TECH trademark to advertise certain products. Supplemental jurisdiction does not extend to this state law claim. Defendant Dermott's motion to dismiss this claim will be granted.

Although the Wiest defendants have not filed any motions yet, federal district courts have an independent obligation to insure that subject matter jurisdiction exists. *See, e.g., Wild v. Subscription Plus, Inc.,* 292 F.3d 526 (7th Cir.2002). Where subject matter jurisdiction is lacking, the court may dismiss a lawsuit on its own motion. *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 778, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) ("Questions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else."). Because I have already concluded that this court lacks supplemental jurisdiction over plaintiff's claim of misappropriation of trade secrets, I will dismiss this claim in its entirety as to all three defendants.

## 3. *Conspiracy*

■ Plaintiff alleges in paragraph 88 of the complaint that defendant Dermott and the Wiest defendants "acted together with a common purpose to damage plaintiff in its trade, reputation, and business." (Dkt.# 2). The subsequent paragraphs describing this "Seventh Cause of Action" (paragraphs 90–92) are limited to defendants' actions concerning the misappropriation of trade secrets. In its brief, however, plaintiff insists that its conspiracy claim encompasses *all* of defendants' actions, not only those pertaining to the misappropriation of trade secrets. According to plaintiff, defendants also conspired to market and distribute products unlawfully bearing the trademark TECH. Plt's Opp. Br., dkt. # 15 at 12. Plaintiff argues that there were facts in the complaint to state a claim that defendant Dermott participated in a conspiracy with the Wiest defendants to use plaintiff's trademark and to harm plaintiff's reputation. According to plaintiff, the first such fact is the Wiest defendants' assertion that defendant Dermott knew about their use of the TECH trademark (Plt.'s Cpt., dkt. # 2, ¶ 28). The second fact is that defendant Dermott made false statements regarding plaintiff's solvency (Plt.'s Cpt., dkt. # 2, ¶ 20).

Although plaintiff did not make it clear in the complaint that the conspiracy claim was not limited to defendants' actions regarding trade secrets, I must draw all inferences in plaintiff's favor. I conclude that the conspiracy claim includes the allegation that defendants conspired to engage in trademark infringing conduct and to harm plaintiff's reputation. This court will exercise supplemental jurisdiction over plaintiff's claim that defendants conspired to use plaintiff's trademark because the facts underlying this claim are largely duplicative of the facts underlying plaintiff's federal claims against the Wiest defen-

dants. Consequently, defendant Dermott's motion to dismiss will be denied as to this claim. However, this court lacks supplemental jurisdiction with respect to plaintiff's claim that defendants conspired to misappropriate trade secrets and to harm plaintiff's reputation, because the facts underlying these claims are not related to the facts underlying plaintiff's federal claims. Defendant Dermott's motion to dismiss will be granted as to these claims. Plaintiff is free to raise this part of its conspiracy claim in state court, together with its other state claims over which this court lacks jurisdiction. On the court's own motion, I will dismiss the conspiracy claims regarding misappropriation of trade secrets and harm to plaintiff's reputation against the Wiest defendants, because the court lacks subject matter jurisdiction over these claims.

ORDER

IT IS ORDERED that

1. Defendant Richard H. Dermott's motion to dismiss plaintiff Tech Enterprises Inc.'s claim of breach of contract is GRANTED;

2. Defendant Dermott's motion to dismiss plaintiff's claim of misappropriation of trade secrets is GRANTED and this claim is dismissed as to all three defendants;

3. Defendant Richard H. Dermott's motion to dismiss plaintiff's claim of conspiracy to engage in trademark infringement is DENIED. Defendant Dermott's motion to dismiss plaintiff's claims of conspiracy to misappropriate trade secrets and injure plaintiff's reputation is GRANTED and these claims are dismissed as to all three defendants.

All claims dismissed pursuant to this order are dismissed without prejudice.